Robert H. SCHMIDT, et al., Plaintiffs,

v.

MONTGOMERY KONE, INC., Defendant.

No. CIV.A. 98–3369.

United States District Court, E.D. Pennsylvania.

Oct. 22, 1999.

Patricia V. Pierce, Catherine Merino Reisman, Willig, Williams & Davidson, James A. Funt, Willig, Williams & Davidson, Philadelphia, PA, for Robert H. Schmidt, John J. Kelly, Plaintiffs.

Debbie R. Sandler, White and Williams, Jun S. Bang, White & Williams, Philadelphia, PA, for Montgomery Kone, Inc., Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiffs, Robert G. Schmidt and John J. Kelly ("Plaintiff Schmidt," "Plaintiff Kelly," or "Plaintiffs") brought this employment discrimination action against the defendant, Montgomery Kone, Inc. ("Defendant" or "MK"). Specifically, Plaintiffs allege that Defendant discriminated against them based upon their age in terminating their employment in the fall of 1996. Plaintiffs also allege that Defendant unlawfully retaliated against them as a result of their filing age discrimination charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). Finally, and in connection with Plaintiffs' discrimination claims, Plaintiff Schmidt brought a claim for intentional infliction of emotional distress against Defendant. At the completion of discovery, Defendant filed a motion for summary judgment as to Plaintiffs' age discrimination and retaliation claims and Plaintiff Schmidt's intentional infliction of emotional distress claim. For the follow-

ing reasons, Defendant's motion will be denied.

## I. FACTS

Viewed in a light most favorable to Plaintiffs, the facts are as follows. Defendant is an elevator repair, installation, maintenance and service company with a branch in the Philadelphia area. Mr. Robert Masterson was Defendant's Modernization and Repair Supervisor. Mr. Masterson recommended to his supervisor, Mr. Lippman, the hiring of Plaintiffs, and Plaintiffs were hired on September 29, 1995. Plaintiff Schmidt was hired as a certified elevator mechanic. Plaintiff Kelly was hired as a mechanic's helper. From the time they were hired, Plaintiffs performed "billable repair" work, meaning that customers were charged on an hourly rate rather than on a fixed rate pursuant to an existing contract, for the work performed by Plaintiffs.

In September of 1996, MK laid off Plaintiffs, citing a lack of sufficient available work, Plaintiffs' lack of specialized skills, and Plaintiffs' brief tenure with the company. At the time of the lay off, Plaintiff Schmidt was 59 years old and Plaintiff Kelly was 45 years old. No other employees, including employees younger than Plaintiffs, were laid off with Plaintiffs. After the layoff, MK assigned work formerly assigned to Plaintiff Schmidt to Kevin O'Keefe, an employee in his thirties. On October 25, 1996, Plaintiff Kelly filed an age discrimination complaint against MK with the EEOC and asked that the same complaint be cross-filed with the PHRC. Plaintiff Schmidt followed the same procedure on November 26, 1996.

MK subsequently called Plaintiffs back to work in February of 1997. Plaintiff Schmidt claims he was assigned to a number of more difficult outdoor construction jobs; the type of assignments he had generally not received prior to his layoff and the filing of the EEOC and PHRC complaints. Additionally, on two occasions, Plaintiff Schmidt was sent to job sites where the equipment necessary to perform the work was not available. Plaintiff Schmidt claims that this had not happened prior to his layoff and subsequent filing of EEOC and PHRC charges. As a result of this lack of equipment, Plaintiff Schmidt contends he was unable to complete his assigned tasks or was placed in physical danger. For example, Plaintiff Schmidt was instructed to transport barrels of contaminated waste during an assignment at the 30th Street Post Office in Philadelphia. Plaintiff Schmidt alleges that because he did not have the proper equipment to perform this task, one barrel fell and caused him to injure his shoulder and accidently swallow some of the contaminated waste. Additionally, Plaintiff Schmidt was not given the proper equipment at the "G.C. Murphy job," which involved repairing a "flooded elevator." (Pl.'s Resp., p. 7–8). Plaintiff Schmidt alleges that because he was not provided with the proper equipment to safely perform this assignment, he received an electrical shock. (Pl.'s Resp., p. 7–8).

Plaintiff Kelly also contends that he was the subject of retaliation after he was recalled. Plaintiff Kelly received a reprimand letter for failing to call in sick on a day he did not report for work. By contrast, other employees who failed to call in sick just one time were not issued formal reprimand letters. Further, an MK supervisor indicated that but for the EEOC charges, he would not have issued the reprimand letter. MK then laid off Plaintiff Kelly again on May 28, 1997, citing a lack of available work.

Plaintiffs' theory of the case is that MK's decision to terminate their employment in the fall of 1996 was based upon their age, in violation of the Age Discrimination and Employment Act (ADEA) and the Pennsylvania Human Relations Act (PHRA). Plaintiffs also argue that after Plaintiffs were recalled, they were assigned to more difficult or dangerous jobs than previously assigned or issued an unwarranted reprimand letter. This conduct, Plaintiffs contend, constitutes retaliation for their filing discrimination charges with the EEOC and PHRC. Finally, Plaintiff Schmidt contends that by retaliating

against him and forcing him to perform more arduous and dangerous tasks than he was previously assigned and to perform assigned tasks without the proper equipment, MK engaged in outrageous conduct that caused him extreme emotional distress and bodily injury.

Defendant contends that Plaintiffs were laid off because there was not sufficient work, Plaintiffs did not have any specialized skill and because they had been with MK only a relatively short time. These reasons, Defendant contends, form the legitimate, non-discriminatory basis for its decision to lay off Plaintiffs. Defendant also argues that Plaintiffs have not made out a prima facie case of unlawful retaliation. Finally, Defendant asserts that its conduct cannot be said to be sufficiently outrageous to support an intentional infliction of emotional distress claim, or in the alternative, that Plaintiff Schmidt's intentional infliction of emotional distress claim is barred by the Pennsylvania worker's compensation statute.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genu-

ine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

### A. ADEA and PHRA Age Discrimination Claims [1]

Defendant asserts that it is entitled to judgment on Plaintiffs' age discrimination claims under the ADEA for two alternative reasons. First, Defendant argues that Plaintiffs have not established a prima facie case of unlawful discrimination under the ADEA. Second, assuming the existence of a prima facie case, Defendant contends that Plaintiffs do not raise a genuine issue of material fact as to whether its legitimate reasons for laying off Plaintiffs are in fact a pretext for age discrimination.

#### 1. Burden Shifting Evidentiary Framework

Under the ADEA, a plaintiff who relies upon indirect or circumstantial evidence enjoys the benefit of the *Burdine–McDonnell Douglas* burden shifting mode of analysis applied in Title VII cases. First, the plaintiff must establish a prima facie case of age discrimination by proving that (1) he was over forty years of age at the relevant time; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; (4) he was replaced by a sufficiently younger person to permit an inference of age discrimination.[2] *Ryder v. Westinghouse Elec. Corp.*,

1. The mode of analysis for ADEA claims is equally applicable to PHRA claims. *See Simpson v. Kay Jewelers*, 142 F.3d 639, 644 n. 5 (3d Cir.1998) (indicating that *McDonnell Douglas* approach applies to ADEA and "analogous provision of the PHRA").

2. It is clear that a plaintiff bringing an ADEA claim need not show that he was replaced by,

128 F.3d 128, 136 (3d Cir.1997) (citing *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 330 (3d Cir.1995)) *cert. denied* — U.S. ——, 118 S.Ct. 1052, 140 L.Ed.2d 115 (1998). Once the plaintiff establishes a prima facie case, the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. *Id.* (citations omitted). If the defendant does so, the plaintiff must then meet his burden of persuasion by proving that the defendant's proffered reasons are not the "true reasons" for its decision, but instead are merely a pretext for age discrimination. *Id.* A corollary to this final step, however, is that rejection of the employer's offered reasons alone permits, but does not compel, an inference that intentional discrimination was the real reason for the adverse employment action. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

### 2. *Defendant's Common Actor Argument*

■ As a preliminary matter, Defendant contends that Plaintiffs' discrimination claims can not prevail because the same person, Mr. Lippman, hired and dismissed Plaintiffs within a one year period of time. This argument is couched as a claim that Plaintiffs have not established a prima facie case of age discrimination. It is better understood, however, as an attack on the inference of discrimination created by the prima facie case.

Defendant points to the Fourth Circuit's decision in *Proud v. Stone,* 945 F.2d 796 (4th Cir.1991), among other decisions from outside of the Third Circuit, for the proposition that no inference of discrimination is created where the same person hired and fired the plaintiff within a short period of time. (Def.'s Mem., p. 13) (citations omitted). Rather, according to this formulation, a strong inference arises against a finding of intentional discrimination where

"the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring . . . ."*Proud,* 945 F.2d at 797.

In *Waldron v. SL Indus., Inc.,* 56 F.3d 491 (3d Cir.1995), the Third Circuit declined to accord the common actor inference of non-discrimination found in *Proud* conclusive weight. *Waldron,* 56 F.3d at 496 n. 6. Rather, under the Third Circuit's approach, the fact that the same person hired and fired the plaintiff within a short period of time may be advanced by the defendant as evidence to be argued to the fact finder, but "it is not to be afforded presumptive value." *Id.* at 496 (agreeing with and citing EEOC brief opposing application of common actor inference).

Furthermore, even assuming the applicability of the common actor inference in this circuit, when the facts are considered in a light most favorable to Plaintiffs, as they must be at this stage of the litigation, there is a genuine issue of material fact as to whether Mr. Lippman hired and laid off Plaintiffs or whether Mr. Masterson actually made the decision to hire Plaintiffs, and Mr. Lippman just "okayed" his decision. (Pl.'s Resp., Ex. A., p. 67). Because there exists a genuine issue of material fact, it would be inappropriate to apply the common actor inference of non-discrimination in this case at the summary judgment stage.

### 3. *Defendant's Legitimate, Non–Discriminatory Reasons*

Once the plaintiff establishes a prima facie case of age discrimination, the defendant must meet its burden of production by stating a legitimate, non-discriminatory reason for its actions. In this case, Defendant contends that the backlog of billable repair work had dropped below the three

---

or that the employer retained, individuals outside of the protected class to satisfy the final element of the prima facie case. The plaintiff must only introduce evidence sufficient to create an inference of age discrimination. *See*

*O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 1309–10, 134 L.Ed.2d 433 (1996); *Showalter v. University of Pittsburgh Medical Center,* 190 F.3d 231, 234–35 (3d Cir.1999).

month level that Mr. Lippman believed was essential to provide enough "fill in" work to keep the Philadelphia branch's construction and modernization crews busy when work slowed down or was delayed. (Def.'s Mem., p. 6). Second, Defendant states that Plaintiffs were laid off because of their brief tenure with the company. (Def.'s Mem., p. 7). Finally, Defendant cites Plaintiffs' lack of specialized or unique skills (for example, neither Plaintiff Schmidt nor Plaintiff Kelly could work on escalators or power walks). (Def.'s Mem., p. 7).

### 4. *Plaintiffs' Evidence of Pretext*

 Once the defendant has articulated a legitimate, non-discriminatory reason, the plaintiff "must point to some evidence, direct or circumstantial, from which a reasonable fact finder could reasonably either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir.1995) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763–64 (3d Cir.1994)). To do so, the plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in the employer's reasons that a reasonable fact finder could find them unworthy of belief. *Id.* (citations omitted).

To satisfy this burden, Plaintiffs advance the following arguments. First, concerning the lack of available work, Plaintiffs point to deposition testimony by Mr. Masterson, Plaintiffs' supervisor, indicating that there was sufficient repair work for the company, and in fact, that repair work "comes in all the time." (Pl.'s Resp., Ex. B., p. 45). Plaintiffs also point to evidence that on several prior occasions, employees were given the opportunity to voluntarily take time off rather than be laid off, but that such an opportunity was not presented to Plaintiffs in this case. (Pl.'s Resp., Ex. B., p. 45–46).

Second, concerning their relative short tenure with MK, Plaintiffs point to deposition testimony by Mr. Lippman, Mr. Masterson's supervisor, that indicates an employee's length of time with MK is given relatively lesser weight in determining who is laid off and that skill, work ethic and customer demeanor are more important factors in the decision making process. (Pl.'s Resp., p. 5). In addition, Plaintiffs have set forth other deposition testimony by Defendant's supervisors indicating that seniority with the company did not usually play a role in layoffs. (Pl.'s Resp., p. 16). As examples, Plaintiffs point out that two helpers less senior than Plaintiff Kelly remained employed, and that at least Mr. O'Keefe, who was less senior than Plaintiff Schmidt and who received Plaintiff Schmidt's former assignments, also remained employed. (Pl.'s Resp., p. 29,30). Plaintiffs also produced deposition testimony by Mr. McKeever, a Defendant supervisor, who stated, "Seniority has never been an issue ever since I've been with the business until now." (Pl.'s Resp., Ex. E, p. 70).

Finally, concerning Defendant's position that Plaintiffs possessed no specialized or unique skills, in particular their inability to work on escalators or moving sidewalks, Plaintiffs point to the testimony of Mr. Lippman who testified that the people with whom he conferred about laying off Plaintiffs had very little or no knowledge of Plaintiffs' ability or skill level. (Pl.'s Resp., Ex. A., p. 93–94). Further, Plaintiffs presented testimony that Mr. Lippman did not believe he spoke with Mr. Masterson about the Plaintiffs' abilities, even though Mr. Masterson was the individual with the most knowledge about Plaintiffs' skills and abilities. (Pl.'s Resp., Ex. A., p. 94–95). Mr. Lippman, in fact, testified to Plaintiffs' skill level by explaining that from the time they were hired to the time they were laid off, he received no complaints about their work. (Pl.'s Resp., Ex. A., p. 71).

Given that as to each of the proffered reasons, Plaintiffs have produced evidence from which the fact finder could conclude Defendant's explanation was unworthy of belief, the Court concludes that there is a genuine issue of material fact that precludes the entry of judgment in favor of Defendant on the discrimination claims.

### B. *ADEA and PHRA Retaliation Claims*

Plaintiffs allege that Defendant unlawfully retaliated against them in response to their filing age discrimination claims with the EEOC and PHRC. Plaintiffs claim that Defendant "engaged in a conscious effort to force them to resign, by assigning them to difficult and dangerous work conditions and subjecting them to unwarranted discipline." (Plaintiffs' Complaint, ¶ 45). Specifically, Plaintiff Schmidt claims that Defendant retaliated against him by assigning him to particularly difficult or dangerous jobs, jobs to which he had not usually been assigned before he filed the EEOC and PHRC charges. In turn, Plaintiff Kelly claims the retaliation against him took the form of an unwarranted reprimand letter placed in his personnel file.

#### 1. *Burden Shifting Evidentiary Framework*

■ The same burden shifting mode of analysis applied to Plaintiffs' discrimination claims is also applicable to their retaliation claims. First, Plaintiffs must establish a prima facie case of retaliation under the ADEA by satisfying three factors. One, Plaintiffs must show that they engaged in protected employee activity. *Barber v. CSX Distribution Services,* 68 F.3d 694, 701 (3d Cir.1995). Two, Plaintiffs must show adverse action by the employer either after or contemporaneous with the employee's protected activity. *Id.* Three, Plaintiffs must show a causal connection between the employee's protected conduct and the employer's adverse action. *Id.* After Plaintiffs establish a prima facie case, the employer is required to articulate a legitimate, non-discriminatory reason for

its adverse employment action. *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 501 (3d Cir.1997) (outlining Title VII retaliation format). The employer, in meeting this burden of production, need not prove that the offered reason actually motivated the decision. *Id.* at 500–01. Rather, the employer can satisfy this relatively light burden by articulating any legitimate reason for the adverse employment action at issue. *Id.* at 500. Finally, if the employer produces a legitimate, non-discriminatory reason, Plaintiffs may prevail if they show both that the offered reason is false and that retaliation was the true reason for the adverse employment action. *Id.* at 501.

Defendant claims that Plaintiffs have both failed to make out a prima facie case of retaliation under the ADEA and that Plaintiffs are unable to show that Defendant's legitimate, non-discriminatory reasons are false and a pretext for retaliation.

#### 2. *Plaintiffs' Prima Facie Case of Retaliation*

■ Defendant does not contest that filing an age discrimination charge with the EEOC and PHRC is protected employee conduct. Rather, Defendant disputes that it took adverse action against Plaintiffs and that there is a causal connection between the protected activity and the adverse action.

■ The requirement that the employer take adverse employment action against the plaintiff requires the plaintiff to show that the adverse action was "material." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1301 (3d Cir.1997)(citing *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 273 (7th Cir.1996)). In other words, not every type of work related friction, regardless of severity, between the employer and the employee will rise to the level of legally sufficient adverse action. For example, as the Third Circuit has explained in the context of a Title VII retaliation claim, "unsubstantiated oral reprimands" and "unnecessary derogatory comments" are not sufficient to constitute adverse employ-

ment action in the retaliation context. *Robinson,* 120 F.3d at 1301. However, as little as "[f]ormal reprimands that result in a notation in an employee's personnel file could be sufficiently concrete ...." *Id.* at 1298 (citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49(1986)).

In this case, Plaintiff Kelly received a formal reprimand letter that resulted in a notation in his personnel file. Three such reprimands at MK are grounds for termination. (Pl.'s Resp., Ex. A., p. 194). Because it was a significant step toward termination, Plaintiff Kelly's reprimand letter carried with it sufficiently concrete consequences to prevent this Court from concluding as a matter of law that it does not constitute an adverse employment action.[3]

■■■ In Plaintiff Schmidt's case, viewed in a light most favorable to him, the facts indicate that he was assigned to significantly more difficult, physically demanding, and dangerous jobs than he had been assigned prior to the filing of the EEOC and PHRC charges. Also, Plaintiff Schmidt has produced evidence that he was not furnished with the proper equipment needed to safely and effectively complete particular jobs after his EEOC and PHRC charges, and that prior to filing the EEOC and PHRC charges, he had never had such a problem. (Pl.'s Resp., Ex. C., p. 70). Specifically, Plaintiff Schmidt was assigned to a winter time outdoor construction job at Wilmington Trust, and not given proper equipment at the "G.C. Murphy job," which involved repairing a "flooded elevator" and led to Plaintiff Schmidt receiving an electrical shock. (Pl.'s Resp., p. 7–8). Plaintiff Schmidt also introduced evidence that even though he was hired primarily to perform billable repair work, and there was billable repair work available after he was re-called, he

was nonetheless assigned to more difficult construction or more dangerous service jobs. (Pl.'s Resp., Ex. B., p. 25–26, Ex. C., p. 65).

Perhaps most indicative of whether Plaintiff Schmidt's post-EEOC and PHRC charges assignments constituted "adverse employment actions" is Defendant's own supervisor's statement that the assignments were retaliatory in nature. Plaintiff Schmidt has produced deposition testimony that Mr. McKeever, an MK supervisor, told another employee that while MK was forced to hire Plaintiff Schmidt back because of the discrimination charges he had filed, MK "fixed him because [the company] stuck [him] in construction knowing he would never last." (Pl.'s Resp., Ex. J., p. 21).[4] On these facts, this Court cannot conclude that Plaintiff Schmidt's work assignments after he filed the EEOC and PHRC charges do not constitute adverse employment action.

Finally, Plaintiffs have presented sufficient evidence of causation to make out a prima facie case. Regarding Plaintiff Kelly, Mr. Lippman testified at deposition that he would not normally have issued a written reprimand to an employee who failed to call in sick the first time, but that he did so in Plaintiff Kelly's case because of "everything that was happening with the various charges." (Pl.'s Resp., Ex. A., p. 192–93). Similarly, as described above, Plaintiff Schmidt has pointed to deposition testimony that Mr. McKeever, an MK supervisor, told another employee that MK was forced to hire Plaintiff Schmidt back because of his discrimination charges, but that MK "fixed him because [the company] stuck [him] in construction knowing he would never last." (Pl.'s Resp., Ex. J., p. 21).[5]

---

**3.** The Court recognizes that Plaintiff Kelly has not introduced any evidence indicating that the reprimand letter at issue led to any actual harm. Therefore, Plaintiff Kelly may not have suffered damages as a result of Defendant's conduct. This issue, however, is not before the Court.

**4.** The statement is admissible as an admission by a party opponent. See Fed.R.Evid. 801(d)(2).

**5.** See Footnote No. 4.

### 2. *Defendant's Legitimate, Non–Discriminatory Reasons*

■ Defendant asserts as its legitimate, non-discriminatory reason for Plaintiff Kelly's written reprimand the fact that he failed to call in sick on a day he did not report to work. As to Plaintiff Schmidt, Defendant claims that Plaintiff Schmidt's assignments were no more difficult than those of any other employee in Plaintiff Schmidt's job classification.

### 3. *Plaintiffs' Evidence of Pretext*

Once the employer produces a legitimate, non-discriminatory reason, Plaintiffs must show both that the offered reason is false and that retaliation was the real reason for the adverse employment action. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir.1997). At this point, Plaintiffs point to the same evidence that was used to establish the causation element of the prima facie case. This evidence consists of testimony by Mr. Lippman that he would not normally have issued a reprimand letter to an employee who failed to call in sick just one time, but that he did so in Plaintiff Kelly's case because of the pending EEOC charges, and testimony by Mr. McKeever that MK retaliated against Plaintiff Schmidt by assigning him difficult or dangerous jobs with the intent that he would resign after a time of performing such assignments. (*See* Pl.'s Resp., Ex. A., p. 192–93, Ex. J., p. 21) A reasonable fact finder could conclude from this evidence that retaliation was the true reason for MK's conduct.

### C. *Intentional Infliction of Emotional Distress Claim*

■ Plaintiff Schmidt, but not Plaintiff Kelly, contends that Defendant intentionally inflicted extreme emotional distress upon him when it "embarked on a premeditated campaign to force his constructive discharge." (Pl.'s Resp., p. 37).

In *Chuy v. Philadelphia Eagles Football Club*, the Third Circuit predicted that the Pennsylvania Supreme Court would adopt the Restatement (Second) of Torts as the governing law in analyzing the tort of intentional infliction of emotional distress. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir.1979). Section 46(1) of the Restatement outlines this intentional tort as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1) (Main Vol.1963–64). The Third Circuit has indicated that the standard for bringing such a claim is significant. The conduct charged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988) *cert. denied* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990).

In this case, Plaintiff Schmidt alleges instances of particular conduct coupled with retaliatory animus taken by Defendant. First, Plaintiff Schmidt alleges that he was assigned to more difficult tasks than he had previously been assigned. Second, Plaintiff Schmidt alleges that because he was not given equipment necessary to effectively and safely perform his assigned tasks, he was placed in physical danger. It is sufficient to examine only Plaintiff Schmidt's second allegation.

Plaintiff Schmidt alleges that, in retaliation for his filing EEOC and PHRC charges, he was assigned to a job that exposed him to serious physical injury. Specifically, Plaintiff Schmidt contends that he was sent to repair a "flooded elevator" without equipment necessary to determine whether there was an electrical current in the water. (Def.'s Mem., Ex. H., p. 68–69). Consequently, when Plaintiff Schmidt attempted to repair the elevator, he received an electrical shock. *Id.*

Taking the facts in a light most favorable to Plaintiff Schmidt, Defendant's conduct is not only retaliatory, but in disregarding the risk of physical injury to Plaintiff Schmidt, it also contains the necessary element of outrageousness to sustain an intentional infliction of emotional distress claim. *Cox*, 861 F.2d at 395.[6]

An appropriate order follows.

### ORDER

**AND NOW,** this **22nd** day of **October, 1999,** it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (doc. no. 33) and Plaintiffs' Motion to Strike Defendant's Reply Brief in Support of its Motion for Summary Judgment (doc. no. 40) are **DENIED.**

**AND IT SO ORDERED.**

---

6. Defendant argues that Plaintiff Schmidt's intentional infliction of emotional distress claim is barred by the Pennsylvania Worker's Compensation Act, 77 Pa. Stat. Ann. §§ 481 & 411. Section 411 is clear that the exclusivity provision of the Act does not cover injuries sustained by virtue of action taken against the plaintiff for reasons personal to the plaintiff. In this case, there is a genuine issue of fact as to whether MK acted with personal animus toward Plaintiff Schmidt; therefore, the Court can not conclude that Plaintiff Schmidt's claim is barred as a matter of law. Defendant, of course, is free to move for judgment in its favor at the close of Plaintiff Schmidt's case pursuant to Fed.R.Civ.P. 50(a).