JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Annie Smith, appeals the judgment of the Cuyahoga County Common Pleas Court granting summary judgment to defendants-appellees, City of Cleveland, Lloyd Bratz and Joseph Sadie, on her claims for racial discrimination, defamation and invasion of privacy. For the reasons that follow, we affirm.
 {¶ 2} The record reveals that plaintiffs Charles Davis, George Early and Annie Smith are or were employed as police officers with the City of Cleveland ("City") in its police department. At all times relevant to this case, Davis was a sergeant in the department, responsible for supervising both Early and Smith, while Davis was supervised by defendants-appellees, Commander Lloyd Bratz and Captain Joseph Sadie. All of the officers worked in the Bureau of Community Police ("BCP"), a unit of the police department aspiring to reduce crime through greater police presence.
 {¶ 3} In February 2001, Davis, Early and Smith, all whom are African-American, filed a complaint against the City, Bratz and Sadie (collectively referred to as the "City" where appropriate), alleging racial discrimination, defamation and invasion of privacy. Early died during the pendency of the action and was subsequently dismissed from the case. The City moved for summary judgment on the defamation and invasion of privacy claims asserted by the remaining plaintiffs and on the discrimination claim asserted by Smith. The trial court granted the motion.
 {¶ 4} The discrimination claim asserted by Davis, however, remained pending and ultimately went to trial, at which time a jury rendered a verdict against the City and awarded Davis damages totaling $8,600.00. Smith is now before this court and appeals the grant of summary judgment to the City on all of her claims.[1]
 {¶ 5} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v.Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus; see, also, Civ.R. 56(C).
 Race Discrimination Claim {¶ 6} In order to prevail on a race discrimination claim brought under Title VII or R.C. Chapter 4112, a plaintiff must make a prima facie showing that he or she (1) is a member of the protected class; (2) is or was qualified for the position and performed it satisfactorily; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated non-minority employees for the same or similar conduct. SeePlumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civ.Rights Comm. (1981), 66 Ohio St.2d 192, 197; see, also, TexasDept. of Community Affairs v. Burdine (1981), 450 U.S. 248,252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207, citing McDonnell DouglasCorp. v. Green (1973), 411 U.S. 792, 802, 93 S.Ct. 1817,36 L.Ed.2d 668. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a legitimate, nondiscriminatory reason for the adverse employment action instituted by the employer. Id. If the defendant makes this showing, the burden shifts once again to the plaintiff, who then is given the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is merely a pretext for impermissible race discrimination. Id. The ultimate burden of persuasion remains at all times with the plaintiff. Id.
 {¶ 7} It is undisputed that Smith is a member of a protected class and appeared to be performing her job somewhat satisfactorily, despite infractions of some department rules. The City maintains that summary judgment was properly granted on this claim, however, because Smith cannot demonstrate that she suffered an adverse employment action. Indeed, Smith continues to be employed as a police officer and, according to the City, has not been subject to a significant change in employment status, such as being discharged, demoted or having her benefits reduced.
 {¶ 8} Smith, on the other hand, contends that she has suffered several instances of adverse employment action. In particular, she contends that she was reprimanded in front of her fellow officers, placed on probation for sick leave abuse and subjected to discipline for actions that similarly-situated non-minority officers were not.
 {¶ 9} In order to demonstrate that an adverse employment action has occurred, a plaintiff must establish that employer conduct caused a "materially adverse change in the terms and conditions of employment." Kocsis v. Multi-Care Mgt., Inc.
(C.A.6, 1996), 97 F.3d 876, 885.
 {¶ 10} "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Hollinsv. Atlantic Co. (C.A.6, 1999), 188 F.3d 652, 662.
 {¶ 11} The anti-discrimination statutes, however, do not insulate an employee from discipline for "violating the employer's rules or disrupting the workplace." Rose v. BuckeyeTelesystem, Inc. (N.D.Ohio 2001), 181 F.Supp.2d 772, 776-777, quoting Scroggins v. Univ. of Minn. (C.A.8, 2000),221 F.3d 1042, 1045.
 {¶ 12} We will discuss in turn each of the incidents that Smith contends constituted an adverse employment action.
 Letter of First Warning for Sick Leave Abuse {¶ 13} The Cleveland Police Department instituted a sick leave abuse policy in 1999, which provided that any officer with four unsupported absences due to sick leave would be investigated for a pattern of sick leave abuse. The documentary evidence appended to the City's brief indicates that Smith was on sick leave for 16 days in one quarter, which triggered an investigation. Bratz ordered Davis to investigate the incidents giving rising to Smith's use of sick time. Davis testified in deposition, however, that he was ordered to issue her a "Letter of First Warning" for sick leave abuse, which he did. This letter stated that Smith's usage of sick time met the definition of "sick leave abuse" because she was on sick leave "sixteen days in a rolling three month period and four of those days were without a doctor's excuse." Davis qualified this reason with the notation that this was his investigation "without consulting [Police Officer] Smith." Regardless of the circumstances surrounding the issuance of this letter, it is undisputed that Smith was indeed absent 16 days in the quarter at issue.
 {¶ 14} A "Letter of First Warning" is considered "Step One" of the Sick Leave Abuse Program, which requires the officer to obtain a physician's certificate clearly justifying each day of sick leave taken for the next nine months. This letter becomes part of the employee's employment record, as does any response by the employee.
 {¶ 15} Disciplinary action in the form of a written warning may constitute an adverse employment action when the warning affects an employee's opportunity for promotion and pay raises or may place the employee on probation. Rose v. Buckeye Telesystem,Inc., 181 F.Supp.2d at 776-777, citing Cunningham v. KansasCity Star Co. (W.D.Mo. 1998), 995 F.Supp. 1010, 1025. The same is true if the warning affects or has an impact on privileges associated with employment. Id., citing Duran v. N.M. Dept. ofLabor (D.N.M. 2001), 143 F.Supp.2d 1278, 1285.
 {¶ 16} Here, Smith argued that the written warning issued to her prevented her from working secondary employment, a privilege of employment. Some courts[2] may construe such a warning letter as an adverse employment action because it has thepotential to affect a privilege of employment. We find it unnecessary to reach this issue, however, because the documentary evidence appended to Smith's brief opposing the City's motion indicates that this warning letter was removed from her personnel record and, therefore, any possible complaint has been remedied.
 Reprimand During Roll Call {¶ 17} In order to increase police presence in the community, the BCP unit requires that each officer ride in his or her own patrol car. The documentary evidence appended to the City's brief indicates that Smith and another officer were observed riding together and that this conduct was brought to Davis's attention. Smith admitted in deposition that she had engaged in such conduct in the past. According to Davis's deposition testimony, Davis was ordered by Bratz to remind the officers of the BCP rule requiring separate cars. During a March 2, 2000 roll call, Davis did so, but in so doing, mentioned Smith and the other officer by name. Smith became upset, asked to be taken to the hospital and was out on sick leave for some time afterward. Bratz chastised Davis for specifically naming the offending officers, but Smith was neither written up or otherwise reprimanded for violating this rule other than being issued this verbal warning by her superior officer.
 {¶ 18} Although a formal reprimand may constitute an adverse employment action under certain circumstances, absent evidence that it is anything more than mere criticism, a verbal
reprimand does not. See Nickell v. Memphis Light, Gas WaterDiv. (C.A.6, 2003), 76 Fed.Appx. 87, citing Morris v. OldhamCounty Fiscal Court (C.A.6, 2000), 201 F.3d 784, 792. At the very least, the verbal reprimand issued to Smith was no more than mere criticism and, therefore, does not qualify as an adverse employment action. At most, it was the result of a violation of department rules and regulations, which equally does not qualify as an adverse employment action.
 Denial of Furlough/Leave {¶ 19} Smith alleged that she was subjected to unequal terms and conditions of employment when she was denied a previously approved request for furlough. According to the documentary evidence appended to the parties' briefs, Smith had asked for April 14, 2000 as a vacation day and received verbal approval from Davis, her supervisor. Davis, however, did not submit the necessary paperwork and, instead, had scheduled Smith to work a "tow sweep" with another officer. Because Davis was out on leave when Smith learned that she had been scheduled to work, she asked the supervisor in charge for leave, which was denied. Smith contends that this denial is the equivalent of an adverse employment action. We disagree.
 {¶ 20} As stated previously, a "materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience * * *." Hollins, 188 F.3d at 662. To be sure, Smith's plans were disrupted but not materially so. Without more, being denied one day of furlough cannot be realistically considered any more than a "mere inconvenience." As such, the City's denial of Smith's request for furlough, under the facts and circumstances described here, does not constitute an adverse employment action.
 Typing of Reports/Denial of Overtime {¶ 21} Smith alleged that she was subjected to unequal terms and conditions of employment when she was required to type lengthy reports and then denied overtime to do so. It appears that Smith was requested to type a "Form 1"[3] explaining her whereabouts on a particular day when her commanding officer was unable to locate her.
 {¶ 22} The parties dispute whether the typing of these type of reports is a form of discipline. The City avers that it is not, while Smith avers that it is.
 {¶ 23} "Generally, a party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact. Otherwise, a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party." Bell v. Beightler, 10th Dist. No. 02AP-569, 2003-Ohio-88, at ¶ 33. (Citations omitted.)
 {¶ 24} Smith avers that she was required to "type lengthy reports," which she avers is "known to the members of the City Police Department to be a form of discipline * * *." Yet nowhere does she corroborate this averment with documentary evidence acceptable under Civ.R. 56. This averment is nothing more than a self-serving statement and does not create an issue of fact precluding summary judgment.
 {¶ 25} Because none of the conduct discussed in this section constitutes an adverse employment action, the trial court did not err in dismissing her claim for racial discrimination.
 Retaliation Claim {¶ 26} To establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate by a preponderance of the evidence that: (1) he or she engaged in activity protected by Title VII; (2) the defendant knew that he or she was engaged in the protected activity; (3) the defendant thereafter took adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. SeeDiCarlo v. Potter (C.A.6, 2004), 358 F.3d 408, 420. "After proving the existence of a prima facie case, the burden [of production] shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action." Nguyen v.Cleveland (C.A.6, 2000), 229 F.3d 559, 562. If the defendant satisfies this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination by establishing that the proffered reason 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action. Manzer v. Diamond Shamrock Chem. Co.
(C.A.6, 1994), 29 F.3d 1078, 1084. If the plaintiff demonstrates that the defendant's proffered, non-discriminatory reason is pretextual, then the fact-finder may infer unlawful retaliation. See Kline v. Tenn. Valley Auth. (C.A.6, 1998), 128 F.3d 337,344.
 {¶ 27} Smith claimed that she "joined in" with Davis in his EEO complaint filed in March 2000, which is a protected activity. Shortly afterwards, she claimed that she was subjected to retaliatory conduct by the City as discussed in Section I. The record, however, indicates otherwise.
 {¶ 28} The EEO Investigative Findings and Recommendations, appended to both parties' briefs, indicated that Davis was the complainant and the focus of the investigation. Davis was the subject of the findings made by the investigator, Caroline Watson, as were the recommendations made. The report merely mentioned Smith as "support[ing] Sgt. Davis'[s] allegations * * *." To be sure, Smith filed an EEO complaint, but not until June 12, 2000, after the alleged incidents that she claims constituted instances of adverse employment action.
 {¶ 29} Nonetheless, Title VII broadly protects an employee's participation "in any manner in an investigation, proceeding, or hearing under * * * [Title VII]." Section 2000e-3(a), Title 42; see, also, Booker v. Brown Williamson Tobacco Co. (C.A.6, 1989), 879 F.2d 1304, 1312. The United States Sixth District Court of Appeals has held that Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEO charge. See Abbott v. CrownMotor Co., Inc. (C.A.6, 2003), 348 F.3d 537, 543. We construe Watson's statement referencing Smith "as supporting" Davis's allegations as participation in the investigation and, therefore, protected activity.
 {¶ 30} Nevertheless, Smith is unable to demonstrate that the City took any adverse employment action as a result of her protected activity. We have determined that the incidents she claims are, in fact, not retaliatory discrimination are not adverse employment actions. Because she relies on the same conduct discussed in Section I to support her retaliation claim, the claim must fail.
 {¶ 31} The trial court, therefore, did not err when it dismissed her retaliation claim under Title VII.
 Defamation and Invasion of Privacy {¶ 32} In its motion for summary judgment, the City argued that it was immune from Smith's claims for defamation and invasion of privacy under The Ohio Political Subdivision Tort Liability Act. Codified at R.C. Chapter 2744, the Act provides, subject to certain exceptions, that a "political subdivision is not liable in damages in a civil action for * * * loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental * * * function." R.C.2744.02(A)(1). The City is a "political subdivision" and the provision of police protection services is a "governmental function." See R.C. 2744.01(C)(2)(a) and 2744.01(F).
 {¶ 33} R.C. 2744.02(B) lists five exceptions to the general grant of immunity, of which the City contended that none apply. Smith, on the other hand, argued that her claims for invasion of privacy and defamation were "intertwined" with her discrimination claims, which are not exempt by R.C. Chapter 2744. See R.C.2744.09. Alternatively, Smith contended that the City acted in "bad faith and with a "reckless disregard" for her rights, apparently referencing the defenses and immunities set forth in R.C. 2744.03.
 {¶ 34} Although it is well established that R.C. 2744.03
merely provides defenses to liability in the event an exception to immunity under R.C. 2744.02(B) applies and may not be used to establish liability in and of itself,[4] we find that R.C. Chapter 2744 affords no immunity to the City by virtue of R.C.2744.09. This statutory provision exempts "[c]ivil actions by an employee * * * against his [or her] political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision." Because Smith's claims for defamation and invasion of privacy are civil actions that arise out of Smith's employment with the City, the City's argument must fail. See, also, Patrolman "X" v.Toledo (1999), 132 Ohio App.3d 374, 397.
 {¶ 35} The City alternatively argued that it was nonetheless entitled to judgment in its favor as a matter of law because the statements at issue were privileged and, therefore, not defamatory. The City argued that it was similarly entitled to summary judgment on Smith's claim for invasion of privacy because the conduct of which she complains does not constitute invasion of privacy as a matter of law. Smith, on the other hand, argued in opposition that genuine issues of material fact exist precluding summary judgment on both of these claims.
 Defamation {¶ 36} Defamation is defined as "a false publication that injures a person's reputation, exposes him [or her] to public hatred, contempt, ridicule, shame or disgrace, or affects him [or her] adversely in his [or her] trade or business." Sweitzer v.Outlet Communications, Inc. (1999), 133 Ohio App.3d 102, 108. In order to prevail on a common-law action for defamation, the complainant must demonstrate that (1) a false and defamatory statement was made about another; (2) there was an unprivileged publication to a third party; (3) there was fault amounting at least to negligence on the part of the publisher; and (4) the statement is actionable irrespective of special harm or the existence of special harm caused by the publication. SeeAkron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.
(1992), 81 Ohio App.3d 591, 601; see, also, 3 Restatement of the Law 2d, Torts (1977) 155, Section 558.
 {¶ 37} The allegedly defamatory statements that served as the basis of Smith's claim involve comments made by Bratz (1) at a staff meeting attended by Sadie, Davis and three other non-party officers; and (2) in a memorandum to the Chief of Police, Martin Flask, and Deputy Chief of Field Operations, Patrick Stephens.
 {¶ 38} The staff meeting comments were made subsequent to the roll call incident discussed previously in Section I(B). From the tenor of the transcript of this meeting, Bratz considered Smith's response to this incident unwarranted and questioned her fitness to carry a gun. In this regard, he requested a psychiatric examination and made comments to the effect that she "shouldn't be a police officer" if she gets upset over such an incident.
 {¶ 39} The City contends that these comments are "privileged" because they were made among Smith's supervising officers about her job performance. Smith disagrees.
 {¶ 40} A defendant in a defamation action can assert the defense of qualified privilege. Hahn v. Kotten (1975),43 Ohio St.2d 237, 243; see, also, A B-Abell Elevator Co. v.Columbus/Cent. Ohio Bldg. Const. Trades Council (1995),73 Ohio St.3d 1, 8. Where the circumstances surrounding the occasion of the alleged defamatory communications are not in dispute, the determination of whether the occasion gives the privilege is a question of law for the court. Id., citing Worrell v.Multipress, Inc. (1989), 45 Ohio St.3d 241, 248-249. A publication is privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." See Hahn v. Kotten,43 Ohio St.2d at 244, quoting Toogood v. Spyring (1834), 149 Eng.Rep. 1044, 1049-1050, 1 C.M. R. 181, 193.
 {¶ 41} The Hahn court further explained:
 {¶ 42} "`A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or whether the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from thenecessity of full and unrestricted communication concerning amatter in which the parties have an interest or duty, and is notrestricted within any narrow limits.'" Id. at 245-246, quotingWest v. Peoples Banking Trust Co. (1967), 14 Ohio App.2d 69,72.
 {¶ 43} It has, therefore, become generally well established that a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege. See, e.g., Evely v. Carlon Co., Div. of Indian Head,Inc. (1983), 4 Ohio St.3d 163; Hanly v. Riverside MethodistHosp. (1991), 78 Ohio App.3d 73, 81; see, also, Matikas v.Univ. of Dayton, 152 Ohio App.3d 514, 2003-Ohio-1852, at ¶ 28.
 {¶ 44} "The defense of qualified privilege is deeply rooted in public policy. It applies in a variety of situations where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection. Accordingly, the privilege does not attach to the communication, but to the occasion on which it is made. It does not change the actionable quality of the publication, but heightens the required degree of fault. This affords some latitude for error, thereby promoting the free flow of information on an occasion worthy of protection." A B-AbellElevator Co., 73 Ohio St.3d at 8. (Citations omitted.)
 {¶ 45} In this case, we find that Bratz's statements were subject to qualified privilege. The comments made at the staff meeting were made among and between those officers responsible for supervising Smith, all of whom have a common interest in providing police protection within the department's jurisdiction. Certainly it is essential among supervising officers to be able to discuss subordinate employees, their conduct and the discharge of their duties. It is incumbent upon them to discuss employee performance, not only as part of their specific duties as supervisors, but as part of their more general duty as supervising police officers charged with a duty to provide police protection to the public. Bratz would be derelict in his duty as a commanding officer if he could not comment on an officer's fitness for duty to other supervising officers, especially when that duty involves the responsibility of carrying a weapon. Moreover, the comments were made at a staff meeting, which was attended only by persons with a need to know the information and whom were capable of implementing a necessary course of action.
 {¶ 46} The same is true regarding Bratz's comments in a memorandum to Flask and Stephens referring to Smith as a "non-performer." The memorandum was addressed to Flask and Stephens only, Bratz's superior officers. The reference to Smith was only part of a longer memorandum that discussed many issues with which Bratz, Flask and Stephens shared a common interest. We see no difference between these comments and those made at the staff meeting.
 {¶ 47} Notwithstanding our finding that these statements were subject to a qualified privilege, statements made with actual malice can defeat a finding of privilege. Jacobs v. Frank
(1991), 60 Ohio St.3d 111, paragraph two of the syllabus. In a qualified privilege case, "actual malice" is defined as acting with knowledge that the statements are false or acting with reckless disregard to their truth or falsity. Id.; see, also, A B-Abell Elevator Co., 73 Ohio St.3d at 11-12. It is not enough to prove the falsity of the statement, but a plaintiff "must prove with convincing clarity that defendant was aware of the high probability of falsity." Id. at 13. "Reckless disregard" requires evidence indicating that the defendant had "serious doubts" as to the truth of the publication. Id. at 12-13. A court is more likely to find reckless disregard "where a story is fabricated by the defendant [or] is the product of his [or her] imagination * * *." St. Amant v. Thompson (1968), 390 U.S. 727,732, 88 S.Ct. 1323, 20 L.Ed.2d 262. Mere negligence, however, is not enough to establish actual malice. Dale v. Ohio Civ. Serv.Emp. Assn. (1991), 57 Ohio St.3d 112, 118.
 {¶ 48} We see nothing in the parties' documentary evidence to indicate that Bratz's comments were made with actual malice. Bratz's comments during the staff meeting were based on events that took place during roll call and were confined to Smith's conduct in response to that incident. Bratz's reference to Smith as a "non-performer" was his assessment of her job performance as relayed to his supervising officer. Without more, we are unwilling to say that Bratz's conclusion regarding Smith's job performance was made with actual malice.
 {¶ 49} Because no genuine issue of material fact remained to be litigated on Smith's claim for defamation, the trial court did not err in granting summary judgment to the City on this claim.
 Invasion of Privacy {¶ 50} Ohio law recognizes three actionable types of invasion of privacy claims. These include (1) the unwarranted appropriation or exploitation of one's personality; (2) the publication of one's private affairs with which the public has no legitimate concern; or (3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. See Housh v. Peth (1956), 165 Ohio St. 35, paragraph two of the syllabus.
 {¶ 51} In her amended complaint, Smith alleged the second type of invasion of privacy claim, the "publication of her private affairs." Smith takes issue with the publication of the "Quarterly Sick Leave Report," which listed the reasons for sick leave among the BCP officers during that particular quarter. In a memorandum from Bratz to Deputy Chief Stephens that was later reproduced in a memorandum from Davis to Captain Sadie, the reasons for sick were listed for eight different employees, one of which was Smith.
 {¶ 52} To prevail on such a claim, Smith must establish that the publication (1) was a public disclosure; (2) disclosed facts concerning her private life; (3) publicized a matter that would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) was intentional; and (5) is not a legitimate concern to the public. Patrolman "X" v. Toledo,132 Ohio App.3d at 396.
 {¶ 53} The City in this case is entitled to judgment in its favor as a matter of law because Smith is unable to establish that publication of the Sick Leave Report constitutes a "public disclosure." "Publicity" means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The Restatement of the Law 2d, Torts (1977) 384, Section 652D, Comment a. "[Publicity is] communication that reaches, or is sure to reach, the public." Id.; see, also, Killilea v. Sears Roebuck Co. (1985),27 Ohio App.3d 163, 166. Here, the Report's disclosure was confined to four individuals: Bratz, Stephens, Sadie and Davis. A disclosure to such a small group of people makes it unlikely that the publication is "sure to reach the public" so as to constitute a "public disclosure." See Alexander v. Culp (1997),124 Ohio App.3d 13, 21. Without any evidence to indicate that the dissemination of this report went beyond these four individuals, Smith is unable to establish that the report's disclosure was a "public disclosure."
 {¶ 54} Consequently, it was not error for the trial court to grant the City judgment in its favor as a matter of law on Smith's invasion of privacy claim.
 {¶ 55} Smith's sole assignment of error is not well taken and is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and Rocco, J., concur.
[1] Davis did not appeal the summary judgment rendered against him on his claims for defamation and invasion of privacy.
[2] See Kim v. Nash Finch Co. (C.A.8, 1997), 123 F.3d 1046,1060; see, also, Schmidt v. Montgomery Kone, Inc. (E.D.Pa. 1999), 69 F.Supp.2d 706, 713-714; cf. Rennard v. Woodworker'sSupply, Inc. (C.A.10, 2004), 101 Fed.Appx. 296, 307-308.
[3] "Form 1" is a departmental information report used internally for communication purposes.
[4] See Cater v. Cleveland (1998), 83 Ohio St.3d 24, 32; see, also, Ziegler v. Mahoning Cty. Sheriff's Dept. (2000),137 Ohio App.3d 831, 835.