**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2081**

DENISE BURGESS,

            Plaintiff – Appellant,

      v.

STUART W. BOWEN, JR., Special Inspector General for Iraq
Reconstruction,

            Defendant – Appellee,

      and

PETE GEREN, The Honorable, in his official capacity as
Secretary of the Army,

            Defendant.

------------------------

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS ASSOCIATION,

            Amicus Supporting Appellant

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  James C. Cacheris, Senior
District Judge. (1:09-cv-00763-JCC-JFA)

Argued: December 8, 2011          Decided:  February 17, 2012

Before TRAXLER, Chief Judge, and AGEE and DIAZ, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge Diaz wrote the opinion, in which Chief Judge Traxler and Judge Agee joined.

────────────

**ARGUED:** Linda C. Bailey, STEPTOE & JOHNSON, LLP, Washington, D.C., for Appellant. Yiris E. Cornwall, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Harry Lee, John F. O'Connor, Michael J. Baratz, STEPTOE & JOHNSON, LLP, Washington, D.C.; Susan E. Huhta, Emily B. Read, THE WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, Washington, D.C., for Appellant. Neil H. MacBride, United States Attorney, Kevin J. Mikolashek, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. Leslie D. Alderman III, ALDERMAN, DEVORSETZ & HORA, PLLC, Washington, D.C.; Alan R. Kabat, BERNABEI & WACHTEL, PLLC, Washington, D.C., for Amicus Supporting Appellant.

────────────

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Denise Burgess, an African American female, was terminated from her executive-level position at a federal agency, purportedly due to a reorganization necessitated by budgetary pressures. The district court granted summary judgment to the agency on Burgess's claims alleging discrimination and retaliation based on her termination and the denial of a transfer to another position within the agency. Viewing the record evidence in the light most favorable to Burgess, we conclude that granting summary judgment to the agency was inappropriate. Accordingly, we vacate the district court's judgment and remand for further proceedings.

## I.

We recite the facts, with reasonable inferences drawn, in favor of Burgess, the nonmovant.[1]

Congress created the office of the Special Inspector General for Iraq Reconstruction ("SIGIR") to oversee all U.S.-funded reconstruction programs and projects in Iraq. Its chief mission is to provide audit and oversight of the use, and

---

[1] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

3

potential misuse, of the Iraq Relief and Reconstruction Fund, and all expenditures associated with reconstruction activities in Iraq. SIGIR is also mandated to provide Congress quarterly and semi-annual reports and maintains a separate Congressional Affairs office to fulfill these responsibilities. Additionally, SIGIR maintains an office of Public Affairs responsible for the organization's external communication. Once a stand-alone office, Public Affairs is now part of the agency's Congressional Affairs office.

Since SIGIR's inception, Stuart Bowen, Jr., has served as the head of the agency. In January 2007, Bowen recruited Burgess to join SIGIR as the Assistant Inspector General for Public Affairs ("AIG-PA") through March 2008.[2] In this role, Burgess served as "the principal staff advisor and expert in the conduct of liaison with national and international news media, other collective and individual stakeholders, and public audiences for [SIGIR]." J.A. 428. In response to Burgess's request for an administrative assistant, SIGIR hired Patricia Redmon, also an African American female, as a contract employee. Although the functions of the Public Affairs office ostensibly

---

[2] Because SIGIR is a limited-purpose, temporary agency, all employees serve for a specified term.

called for four full-time employees, Burgess and Redmon were the office's only employees during Burgess's tenure.

Following a brief detail to the U.S. State Department, Ginger Cruz returned to SIGIR in February 2007 as a "Senior Advisor." In June 2007, Cruz was restored to her former post as Deputy Inspector General for Policy, where she directly supervised Burgess. According to Burgess, Cruz took an immediate dislike to her and began usurping Burgess's authority and duties and making discriminatory and harassing remarks. In one such incident, Cruz "out of the blue" told Burgess that "people who file discrimination complaints are weak links in the chain . . . looking to excuse their own personal failing." Id. 1350. Burgess interpreted this comment as racial bias directed against her specifically. Burgess eventually raised the issue of Cruz's general hostility toward her with SIGIR's Chief of Staff Nick Arnston, alleging that Cruz was targeting her because of her race.

On July 19, 2007, Cruz notified Burgess that Redmon was to be terminated in two weeks' time. Burgess responded that she believed that she and Redmon were being targeted, and that the Public Affairs section--then consisting solely of two African American women--was being singled out for elimination. Burgess also expressed that it would be difficult for her to manage the section's workload without an assistant. Cruz did not respond

5

directly to Burgess's claim that she and Redmon were being targeted, but did assure Burgess that she would have adequate administrative support going forward.

On July 23, Burgess sent an email to Cruz in which she questioned the "fairness and equality" of the decision to terminate Redmon. Id. 305. She asked to meet with Cruz to discuss the matter. Cruz in turn contacted Arnston and requested that he arrange a meeting between Cruz and Patrick Bowers, SIGIR's deputy general counsel. The purpose of that meeting was to discuss, among other topics, "EEO [Equal Employment Opportunity]" matters. Id. 1945.

Later that day, Cruz notified Burgess in a meeting also attended by Bowers that Burgess's AIG-PA position was being eliminated because of budget constraints. When Burgess pressed for a more detailed explanation, Cruz responded that the position was being eliminated as part of a budget-driven reorganization and that SIGIR required the "right mix of people." Id. 159. Cruz resisted Burgess's further inquiries, and informed Burgess that she was to remain on paid administrative leave until September 1, 2007, although she was not to return to work after July 27. Arnston later wrote to Burgess and explained that she was being terminated "[d]ue to the reorganization of the Office of Public Affairs." Id. 386.

6

Separately, also on July 23, Cruz asked Arnston to draft a position description for a new Director of Public Affairs ("DPA") position. A former SIGIR employee, Kristine Belisle, a white woman, was selected for the new position, even though performance deficiencies were in part responsible for her initial departure from SIGIR in March 2007. Cruz later explained that Belisle was hired over Burgess because the DPA role required "someone who was able to do the heavy lifting, who was not above making the phone calls, who was not above doing . . . the day-to-day scheduling, management and callbacks." Id. 65.[3]

---

[3] Cruz admitted, however, that she might have been open to hiring Burgess in another capacity had their July 23 meeting gone differently.

> Q: But yet there could be no opportunity for [Burgess] to be the director of public affairs?
>
> A: No.
>
> Q: No opportunity anywhere else in the agency?
>
> A: No.
>
> Q: And no discussion whatsoever of other opportunities?
>
> A: No.
>
> Q: However, had the conversation that you had on July 23rd gone differently, you may have been able to explore some opportunity?
>
> A: I would have spoken to her about it. I don't know that we would have arrived at anything other than the decision we ended up with.

(Continued)

7

It was common practice in SIGIR to reassign employees who were terminated, whether through a "reorganization" or otherwise, to other positions within the agency. Despite Burgess's laudable work--as evidenced by her receipt of a letter of commendation for "exemplary service on the job" accompanied by an $8500 cash reward on May 31, 2007, and a separate letter from Arnston in which he congratulated Burgess on her fine performance--she was not offered another position in the agency.

Burgess was the only African American member of SIGIR's senior management at the time, the only member of senior management to be involuntarily terminated, and the only SIGIR employee terminated as part of the agency's reorganization.

After exhausting her administrative remedies, Burgess filed a four-count complaint in the district court alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., with respect to her termination and the denial of her transfer to the DPA position or another position within the agency. SIGIR moved for summary judgment, which the district court granted. Burgess timely appealed.

---

Id. 1677.

II.

A.

We review de novo a grant or denial of summary judgment, applying the same standard applied by the district court. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 938 (4th Cir. 1991). Summary judgment is appropriate only where the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The summary judgment inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. Only in the latter case may the court grant summary judgment, but a jury must resolve the dispute if the evidence permits either of two reasonable conclusions. Id. at 250-51; In re French, 499 F.3d 345, 352 (4th Cir. 2007).

It is not the district court's role to "weigh the evidence and determine the truth of the matter" but instead to determine whether there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. A district court considering a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party, Unus v. Kane, 565 F.3d 103, 115 (4th Cir. 2009), and draw

9

all inferences in favor of the nonmovant, Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

A three-step framework applies to the resolution of discrimination and retaliation claims where, as here, there is only circumstantial evidence. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) (discrimination); Lamb v. Boeing, 213 F. App'x 175, 179 (4th Cir. 2007) ("Retaliation claims function in parallel.") (citing Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997)). First, the plaintiff has the initial burden to prove her prima facie case by a preponderance of the evidence, which she may do by "proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination [or retaliation]." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). If such a showing is made, the burden shifts to the defendant to come forward with evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination [or retaliation] was not the cause of the employment action." Hicks, 509 U.S. at 507 (citing Burdine, 450 U.S. at 254-255). If the defendant makes such a showing, the

presumption created by the plaintiff's prima facie case "drops out of the picture," and the burden shifts back to the employee to present evidence from which a reasonable juror could find that the proffered reason was a pretext for discrimination or retaliation. Id. at 511 (citing Burdine, 450 U.S. at 255). If the plaintiff can demonstrate "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination [or retaliation]," summary judgment is not appropriate. Burdine, 450 U.S. at 253.

The parties dispute whether the district court applied an incorrect standard in evaluating Burgess's discrimination claims. Following the Supreme Court's opinion in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), many district courts required plaintiffs to provide additional evidence to demonstrate racial discrimination, once the burden shifted back to the plaintiff after an employer's proffer of a legitimate nondiscriminatory reason for its action. This "pretext plus" standard stemmed from the Court's pronouncement that, after the employer's proffer, "[t]he plaintiff then has 'the full and fair opportunity to demonstrate,' through presentation of his own case and through cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision,' and that race was." Id. at 507-08 (quoting Burdine, 450 U.S. at 256).

11

In *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133 (2000), the Supreme Court clarified that a prima facie case of discrimination, combined with evidence from which a jury could conclude that an employer's proffered justification was false, supported an inference of discrimination sufficient to defeat summary judgment. In other words, a plaintiff is not required to provide additional evidence that race was the true reason for the employment decision. The Court further explained as follows:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose . . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Id.* at 147-48 (citations omitted).

*Reeves* did allow, however, that a prima facie case of discrimination combined with evidence of pretext might fail to sustain a jury's finding of liability, in unique situations where "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the

12

plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Id. at 148; accord Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 258-59 (4th Cir. 2001) ("[O]nce a plaintiff has established a prima facie case and shown the defendant's explanation to be false, the plaintiff need not submit additional evidence of discrimination unless 'no rational factfinder could conclude that the action was discriminatory.' " (quoting Reeves, 530 U.S. at 148)).

Applying the McDonnell Douglas framework, the district court found with respect to all four claims that Burgess either failed to establish a prima facie case of discrimination or retaliation, or failed to demonstrate pretext after SIGIR provided legitimate nondiscriminatory reasons. The district court thus granted summary judgment to SIGIR on all four of Burgess's claims. Burgess contests the district court's ruling on each claim, asserting that the district court (1) held her discrimination claims to the "pretext-plus" standard the Supreme Court rejected in Reeves and (2) erred in concluding that there was no evidence to support a causal connection between Burgess's protected activity and the agency's decision to both terminate Burgess and deny her a transfer. We address each claim in turn.

13

Burgess first contends that she suffered racial discrimination when her AIG-PA position was terminated and when a less qualified white woman was selected for the DPA position created in its place. To establish a prima facie case of discriminatory termination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) in spite of her qualifications and her performance, she was fired; and (4) she was replaced by someone outside her protected class, or otherwise treated differently than similarly situated persons outside the class. See McDonnell Douglas, 411 U.S. at 802. The district court characterized the last prong as whether "the position remained open to similarly qualified applicants after her dismissal." Burgess v. Bowen, No. 09-763, 2010 WL 3064307, at *8 (E.D. Va. Aug. 2, 2010) (quoting Williams v. Cerberonics, 871 F.2d 452, 455-56 (4th Cir. 1989)).

The district court held that Burgess had not established her prima facie case. Specifically, the court concluded that Burgess was not replaced by someone outside her protected class because the AIG-PA position had been eliminated and thereby did not remain open to similarly qualified applicants following Burgess's dismissal. Further, the district court concluded that

the new DPA position was not, contrary to Burgess's assertion, the functional equivalent of the AIG-PA position. As evidence of this, the district court relied on certain differences in the written descriptions of the positions and the responsibilities thereunder. The district court further accepted SIGIR's contention that the new position was ministerial in nature involving no management or supervision of employees, in contrast to the autonomous managerial and policy functions of the AIG-PA position.

Neither party has articulated a standard by which to properly assess whether a position remains open in the face of some changes in the written job description. Both parties do, however, draw our attention to Murray v. Gilmore, 406 F.3d 708, 714 (D.C. Cir. 2005), in which the D.C. Circuit concluded that the plaintiff offered "plentiful evidence from which a jury could conclude that rather than functionally eliminating the [plaintiff's position], [the defendant] simply gave the position a new title and tapped [someone else] to hold it." That case offers us little guidance, however, because the defendant there acknowledged that the two positions had "comparable, dual, functionally equivalent, overlapping responsibilities," and admitted that "a reasonable jury could conclude that [the defendant's proffer] was pretext." Id. (internal quotations omitted). There has been no such admission here, nor does a

15

straightforward comparison of the written job descriptions clearly indicate whether or not the positions are functionally equivalent.

We accept the district court's premise that there may be circumstances in which the differences between two written job descriptions are so stark such that it cannot be said that "the [first] position remained open to similarly qualified applicants," Burgess, 2010 WL 3064307, at *8. In this case, however, the district court failed to credit Burgess's evidence tending to show that the positions were intended to be functionally equivalent and that both involved the same managerial and oversight responsibilities.

Specifically, Cruz initially sought to hire Belisle under the identical title, responsibilities, and salary as enjoyed by Burgess, but shifted gears after being alerted that her proposal was inconsistent with the agency's contention that Burgess's position was eliminated because of a reorganization. Only then did the agency revise the description, responsibilities, and salary of the DPA position. Despite the changes, however, Belisle testified that, as the DPA, she in fact "was the sole person managing public affairs, in the sense that [she] was the sole person implementing the skills and activities of the position." J.A. 1260. The new DPA position also involved the

16

supervision of a support staff member who split time with Public Affairs and another department.

Because the district court failed to view this evidence in the light most favorable to Burgess, it erred in finding that Burgess had not established her prima facie case. Indeed, the transfer of most of the AIG-PA responsibilities to the DPA position was, in our view, itself sufficient to meet Burgess's burden. See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1225 (2d Cir. 1994) (holding that the plaintiff established a prima facie case where the employer reassigned almost all of plaintiff's duties to an employee outside of the plaintiff's protected class). Although the district court found that the "AIG-PA position was eliminated" and "reject[ed the contention] that it was merely 'renamed' as the Director of Public Affairs," Burgess, 2010 WL 3064307, at *9, a reasonable jury could conclude otherwise. See Garcia v. Pueblo Country Club, 299 F.3d 1233, 1239-41 (10th Cir. 2002) (reversing summary judgment because whether plaintiff's position was eliminated or he was replaced was a "key" material factual dispute).

The district court's analysis nevertheless assumed that Burgess had established a prima facie case, but concluded that SIGIR had provided legitimate nondiscriminatory reasons for Burgess's termination: that budgetary pressures necessitated

17

the elimination of Burgess's position, that the entire Public Affairs section was reorganized, and that other employees were terminated or had their contract positions revoked. Accordingly, the district court found that Burgess failed to establish that SIGIR's reason for her termination was pretextual. Specifically, the district court held that "Plaintiff must show there is a genuine issue of material fact regarding a connection between her race and her adverse employment action" and "Plaintiff has not come forward with evidence that these acts were motivated by race discrimination." Burgess, 2010 WL 3064307, at *11.

Viewed in the light most favorable to Burgess, however, the record evidence reveals significant inconsistencies as to whether other employee or contract positions were eliminated as part of a reorganization, whether budgetary pressures in fact necessitated the elimination of Burgess's position, when the decisions were made to execute any reorganization, whether the Public Affairs section was actually reorganized to promote savings, and whether the elimination of Burgess's position actually achieved any meaningful savings. Although the district court was not persuaded by this evidence, the proper standard is whether a reasonable jury could have found SIGIR's proffered explanation incredible and, thus, could have concluded that Burgess's termination was discriminatory.

18

We hold that the district court erred in concluding, as a matter of irrebuttable fact, that the AIG-PA position had been eliminated and that the position created in its place was not sufficiently similar to present that issue to the jury. Second, the court failed to view the record evidence supporting Burgess's challenges to the credibility of SIGIR's proffered explanation in the light most favorable to her, and thus failed to apprehend that such evidence standing alone was sufficient to show pretext after SIGIR proffered its nondiscriminatory explanation.

Accordingly, we vacate the district court's decision to grant summary judgment to SIGIR on Burgess's first claim of discriminatory termination.[4]

---

[4] The parties also dispute the district court's finding of a "same actor" inference, which permits courts to reject discriminatory termination claims when the same actor both hired and fired the plaintiff. As we have held, "[w]hen the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer, and the early resolution of this question need not be derailed by strict fealty to proof schemes." Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991). The district court found that the same actor inference applied, because Burgess was both hired and fired by Bowen. Burgess contends that she was hired by Bowen and fired by Cruz, the latter decision occurring under circumstances showing that Bowen merely rubber-stamped Burgess's termination after delegating personnel decisions to Cruz. Viewed in the light most favorable to Burgess, the evidence presents a genuine issue of fact as to who made the decision to terminate Burgess, and thus whether the same actor inference should apply. See, e.g., Schmidt v. Montgomery Kone, Inc., 69 F. Supp. 2d 706, 711 (E.D. Pa. 1999) (distinguishing
(Continued)

Burgess also alleges that she suffered racial discrimination when she was denied a transfer to the DPA position or a "Senior Advisor" position to which terminated employees were routinely assigned.[5] To establish a prima facie case for a discriminatory denial of transfer claim, a plaintiff must show that (1) she is a member of a protected group; (2) she applied for the position in question;[6] (3) she was qualified for the position; and (4) she was rejected for the position in favor of someone not a member of the protected group under

---

Proud and holding that reliance on the "same actor" inference at the summary judgment stage is misplaced where there exists a factual dispute regarding who hired and fired the plaintiff). Indeed, Cruz herself testified that she made the decision to terminate Burgess, and Bowen agreed thereafter.

[5] Burgess contends that it was SIGIR's common practice to assign underperforming employees, or those whose positions had been eliminated, to "Senior Advisor" positions. She argues that the fact that she was not offered such a position demonstrates further that she suffered discrimination. SIGIR disputes this claim, arguing that no such policy existed. Because we find for Burgess on her contention that she was denied a transfer to the DPA position, we do not address this separate argument.

[6] As the district court acknowledged, Burgess cannot show that she applied for or requested a transfer within the agency. Burgess did, however, file a declaration stating that she "would have chosen to stay on at SIGIR in the Director of Public Affairs position or any other position in lieu of termination," id. 2118 (internal quotations omitted), which the agency did not rebut. On this record, the district court elected to treat Burgess as though she had applied for a transfer, a determination that the agency does not challenge on appeal.

circumstances giving rise to an inference of unlawful discrimination. Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 760 (4th Cir. 1998) (vacated on other grounds).

The district court found that Burgess had established a prima facie case with respect to this claim. However, the court again found that SIGIR had proffered a legitimate nondiscriminatory reason for denying Burgess the transfer: that Burgess "was not the person for the job," Burgess, 2010 WL 3064307, at *12 (internal quotations omitted), and that "Cruz genuinely perceived that the new . . . position should be filled by a lower level, hands-on employee," id. at *13, who would "do the heavy lifting, who was not above making the phone calls . . . the day-to-day scheduling, management and callbacks," id. at *12 (internal quotations omitted). The district court concluded that Burgess had failed to present evidence to establish that this proffered reason was pretextual.

SIGIR asserts that Burgess's own complaints about lacking administrative support and resources rendered her unfit for the DPA position. While Burgess admits to complaining about being understaffed during her time as the AIG-PA, this does not necessarily compel the conclusion that she was unable to accomplish the tasks required of the DPA position. On that score, Burgess points to evidence showing that she was awarded a bonus for exemplary performance and that she routinely worked

21

late hours to execute the functions of the Public Affairs office. This evidence, Burgess contends, demonstrates that she was fully able and willing to assume any responsibilities called for by the DPA position. Burgess further contends that Belisle--who herself had been terminated at least in part for poor performance--was in no better position to do so. Finally, Burgess argues that SIGIR's vague characterization that she "was not the person for the job," id. at *12 (internal quotations omitted), cannot suffice as a legitimate nondiscriminatory reason for denying her the transfer; in fact, she contends that the statement could just as well reveal racial animus. We agree with Burgess that it should be up to a jury whether to credit SIGIR's explanation.

Although we agree with the district court that "there must be a sufficient record of proof for a reasonable jury to agree [that race was the basis for denying Burgess a transfer]," id. at *13 (citing Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1995)), we find Burgess satisfies this standard. Burgess's evidence as to this claim reveals inconsistencies undermining the credibility of SIGIR's proffered explanation as to why it declined to offer Burgess a transfer to the DPA position. Under Reeves, Burgess was required to do no more to survive a motion for summary judgment. Accordingly, we vacate the district court's decision as to this claim.

22

C.

Burgess also alleges that she suffered unlawful retaliation, once when she was terminated and again when she was denied a transfer. To establish a prima facie case for retaliation, a plaintiff is required to prove the following: (1) she engaged in a protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal connection between the first two elements. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998). If she does so, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for its decision, which she must then rebut. Id. The district court assumed that Burgess engaged in protected activity, but found that her claims failed the third prong because the decisions to terminate Burgess's position and to hire Belisle were made as part of SIGIR's reorganization plan prior to Burgess engaging in any protected activity.

The parties first contest whether Burgess in fact engaged in protected activity. Burgess contends that she engaged in two protected acts, the first when she verbally complained to Cruz that she and Redmon were being "targeted," and the second when she questioned the "fairness and equality" of Redmon's termination in a subsequent email to Cruz. As to the first point, Burgess explains that her "intent of using the word

23

targeted was to alert [Cruz] in very concrete terms that there was concern on [Burgess's] part that this was racial." J.A. 1371. As to the second point, Burgess asserts that her email borrowed verbatim from language that appeared on the Equal Employment Opportunity Commission website and was also contained in SIGIR's EEO policy.

Our cases hold that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct. Richardson v. Richland Cnty. School Dist. No. 1, 52 F. App'x 615, 617 (4th Cir. 2002) (citing Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 291-92 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.")); Sajadian v. Am. Red Cross, No. 99-1263, 1999 WL 1111455, at *1 (4th Cir. Dec. 7, 1999) (same); see also EEOC Compliance Manual § 8-II.B.2 (2006) ("[A] protest is protected opposition if the complaint would reasonably have been interpreted as opposition to employment discrimination."). Determining whether an employer should have understood a complaint to constitute protected activity requires courts to consider whether the complaint could reasonably have led the

employer to understand the nature of the complaint in the context in which it was made. Richardson, 52 F. App'x at 617.

We find that SIGIR actually understood or should have understood that Burgess was complaining of discriminatory conduct. See Okoli v. City of Baltimore, 648 F.3d 216, 224 (4th Cir. 2011) (finding that it was "enough for [the plaintiff] to twice complain of 'harassment,' even if it might have been more ideal for her to detail the sexual incidents she later relayed" and that the employer "surely should have known that [the plaintiff's] complaints of 'harassment' likely encompassed sexual harassment"). Indeed, the response to Burgess's email underscores our conclusion, because Cruz almost immediately asked to consult with SIGIR's counsel after receiving Burgess's complaint, and the ensuing discussions included "EEO" issues. The evidence also shows that Cruz, whose former role as SIGIR's Chief of Staff made her well familiar with personnel matters, forwarded Burgess's complaint to Arnston, SIGIR's then chief of staff, who had already discussed with Burgess her concerns about race discrimination. Three attorneys, including one experienced in employment law, also received Burgess's complaint. On these facts, we have no trouble concluding that SIGIR either understood, or at the very least should have understood, that Burgess was complaining of discriminatory conduct.

Turning now to the merits of the retaliation claims, we acknowledge that some of the evidence before the district court supports SIGIR's position that the decision to terminate Burgess, as well as the decision to hire Belisle for the DPA position, occurred prior to Burgess's engaging in protected activity. However, in Okoli we found it "deeply suspicious" that an employee was fired only hours after she complained to her superiors. Id. at 223. Further, we found it "undisputed" that the employee's supervisor fired the employee "only after learning of her complaint" and that "[e]ven assuming [the supervisor] previously contemplated firing her--[the employee's] complaint might have been an additional or superseding cause of her ultimate termination." Id. at 224. We therefore concluded that "[a]ny dispute about [the employer's] alternative, legitimate basis for firing her returns to the question of mixed-motives and pretext." Id. at 225.

In this case, a jury could reasonably find that the decision to terminate Burgess and to hire Belisle occurred only after Burgess challenged the fairness and equality of the decision to terminate Redmon. Specifically, Burgess presented evidence that, only after Cruz received Burgess's email, did Cruz (1) telephone Belisle to offer her a contract position handling the public affairs duties (before the DPA position was finalized), (2) instruct Arnston to draft a description for the

26

new DPA position, and (3) schedule a meeting to inform Burgess of her termination. Finally, and most probative on Burgess's retaliatory denial of transfer claim, is Cruz's own admission that she would have considered offering Burgess another position had the conversation during Burgess's termination meeting gone differently.[7]

We have held that "[v]ery little evidence of a causal connection is required to establish a prima facie case [of retaliation]," Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998) (overruled on other grounds); temporal proximity between the protected activity and the employer's adverse action alone will suffice, see Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); accord Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004). We agree with Burgess that she has established a prima facie case of retaliation. In concluding otherwise, the district court again failed to view the evidence in the light most favorable to Burgess.

Burgess's claims may nevertheless fail if she cannot overcome SIGIR's proffer of a legitimate, nonretaliatory explanation. The district court dispensed with this analysis

_____

[7] Even if the decision to terminate Burgess had already been made, denying Burgess a transfer itself constitutes an adverse action and entitles her to present her retaliation claim to the jury. See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 62 (2006).

27

having found no prima facie case.  We find here that the question of whether the agency proffered a nonretaliatory reason for terminating Burgess and denying her the transfer merges with our prior discussion concerning the agency's proffered reason in the context of Burgess's discrimination claims.  Although we agree with the district court that the agency has proffered a legitimate nonretaliatory reason, Burgess's prima facie evidence combined with the additional evidence tending to undermine the credibility of that reason suffices to defeat the agency's motion for summary judgment.

## IV.

In sum, the record in this case reveals an abundance of genuine factual disputes on material issues.  While we have viewed and recounted the facts in the light most favorable to Burgess, we acknowledge that SIGIR's contentions also find support in the record.  Be that as it may, the evidence in this case was not "so one-sided" as to warrant granting SIGIR's motion for summary judgment on Burgess's claims.  Accordingly, we vacate the district court's judgment and remand for further proceedings.

<u>VACATED AND REMANDED</u>

28