**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2353**

CRAIG WATERS,

> Plaintiff - Appellant,

v.

LOGISTICS MANAGEMENT INSTITUTE,

> Defendant - Appellee.

—————————

**No. 17-1056**

—————————

CRAIG WATERS,

> Plaintiff - Appellee,

v.

LOGISTICS MANAGEMENT INSTITUTE,

> Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:15-cv-01655-CMH-JFA)

Argued:  January 23, 2018                    Decided:  February 9, 2018

Before WILKINSON, AGEE, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Adam Augustine Carter, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant/Cross-Appellee. Lincoln Owens Bisbee, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** R. Scott Oswald, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant/Cross-Appellee. Grace E. Speights, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C.; Andrew G. Sakallaris, LOGISTICS MANAGEMENT INSTITUTE, Tysons, Virginia, for Appellee/Cross-Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff-appellant Craig Waters brought this age discrimination suit against his former employer, Logistics Management Institute (LMI). Waters alleges that the district court erred in granting summary judgment to LMI. Specifically, he argues that he presented an issue of triable fact on whether he was terminated because of his age or, in the alternative, as retaliation for expressing concerns about his job security. LMI, however, had a consistent and non-pretextual business explanation for its decision to fire Waters. We thus affirm the judgment.

I.

LMI is a nonprofit organization that offers consulting services to the government. When this suit was filed, the firm employed around 1,200 employees. Two-thirds of the company's workforce was over the age of forty, and forty percent of the employees were over fifty.

LMI hired Waters in October 1988. His job was to provide computer support for various company teams. Ten years later, Waters moved to LMI's Corporate Information Systems (CIS) department, where he was promoted to supervisor of CIS's Applications Development group. In that role, Waters was responsible for supervising three programmers who designed and maintained business applications that LMI used internally.

Although Waters' performance reviews were generally positive, his yearly evaluations indicated that he did not take to his supervisory role. When asked about Waters during an internal company review of the CIS department, at least three LMI

3

executives complained about his inability to turn around projects in a timely manner and about his reluctance to adequately supervise the programmers in his group.

In May 2013, LMI hired Lori Becker as Chief Financial Officer (CFO). As CFO, she was responsible for overseeing CIS. Because Becker felt that CIS was costly and prone to unnecessary delays, she brought in G2SF, a technology consulting firm, to evaluate the CIS department. G2SF concluded that CIS was not operating efficiently and recommended that it be reorganized. Based on G2SF's analysis, Becker hired William Brydges to replace Robert Bertha as the director of CIS. Becker tasked Brydges with making the department run more efficiently.

Shortly before Brydges began his review of CIS, Waters met with Becker informally to discuss his future at LMI. Bertha's resignation had left Waters concerned about his own job security, and he expressed this concern to Becker in late September 2014. During the meeting, Becker asked Waters why the Applications Development group needed four programmers. Waters left fearful that he would no longer have a role at LMI.

Brydges proceeded to evaluate every group in CIS, including Infrastructure, Information Security, and Applications Development. He met with numerous CIS employees, including Waters, and also with a number of executives from other departments.

During his evaluation of CIS, Brydges concluded that the division would operate more effectively if the Applications Development group did not build and maintain custom business applications, but instead purchased existing software from other

companies. For this reason, he felt that CIS needed employees who could work with internal clients using software that was already available. After discussing his plan with Waters, Brydges felt that Waters did not understand the strategy he intended to implement. Brydges also concluded that Waters did not adequately perform his supervisory duties, and that he was effectively a fourth programmer who was paid approximately twenty percent more than the other programmers in the group.

After finishing his review of CIS, Brydges decided to reorganize the department. As part of this restructuring, he recommended disbanding the Applications Development group and eliminating Waters' position as supervisor of that group. Brydges terminated Waters in January 2015. Waters was the only employee who was fired in this restructuring. He was fifty-two at the time.

Eleven months later, Waters filed a suit against LMI, claiming that his termination violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. First, he argued that his termination constituted unlawful age discrimination under 29 U.S.C. § 623(a). And second, he argued that his termination constituted unlawful retaliation for complaining about his job security, which he claimed was protected activity under 29 U.S.C. § 623(d).

Waters relied on the following facts to support his claim. First, Waters pointed out that during a Town Hall meeting in July 2014, LMI's CEO, Nelson Ford, said that "people with gray hair are probably not the future" of the firm. J.A. 608-10. Three months before Waters was terminated, Ford apologized for his remarks and clarified that he only intended his words to be understood in connection with succession planning.

5

Second, Waters noted that LMI reduced certain benefits such as retirement contributions and annual leave accrual for employees with more than fifteen years of service. And third, Waters claimed that he engaged in protected activity when he met with Becker to discuss his job security, and that a jury could reasonably find that he was fired in retaliation for opposing LMI's allegedly discriminatory employment policies.

Following discovery, LMI filed a motion for summary judgment, which the district court granted. The court found that LMI had a "legitimate, non-discriminatory reason for terminating Plaintiff's employment." J.A. 506. Specifically, it determined that Waters was fired because he failed to perform his job satisfactorily, and because LMI did not see a place for him in the reorganized CIS group. LMI also filed an eleventh-hour motion for sanctions and attorney's fees, which the district court denied.

## II.

## A.

On appeal, Waters contends that he presented an issue of triable fact about whether he was terminated because of his age. As a result, he argues that the district court erred in granting summary judgment to LMI. We review de novo the district court's decision to grant summary judgment to LMI. *See Medical Waste Assocs. v. Mayor & City Council of Balt.*, 966 F.2d 148, 150 (4th Cir. 1992).

The ADEA forbids an employer from taking an adverse employment action against an employee "because of" that employee's age. 29 U.S.C. § 623(a)(1). A plaintiff bringing a disparate-treatment suit under the ADEA must prove that his age was a motivating factor in the challenged adverse employment action. *See Gross v. FBL Fin.*

6

*Servs., Inc.*, 557 U.S. 167, 180, (2009). In the absence of direct evidence of discrimination, a plaintiff must proceed under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-07 (1973).

There are three steps in the *McDonnell Douglas* framework: (1) the plaintiff must establish a prima facie case of discrimination; (2) if the plaintiff presents a prima facie case, then the burden shifts to the defendant to show a legitimate and non-discriminatory reason for the adverse employment action; and (3) if the defendant shows such a reason, then the burden shifts to the plaintiff to prove that the reason is pretextual. *See McDonnell Douglas Corp.*, 411 U.S. at 802-04.

Waters did not establish a prima facie case of age discrimination. To do so, a plaintiff must show that he "was performing [his] job duties at a level that met [his] employer's legitimate expectations," and either that his position remained open or that he was replaced by a "substantially younger" person. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). Waters did neither.

First, Waters did not perform his job duties to LMI's satisfaction. Waters' primary responsibility as supervisor of Applications Development was to "[s]upervise, organize, and control the activities of department staff responsible for developing, maintaining, and modifying application programs." J.A. 177-80. For ten years, he received poor performance reviews concerning his ability to manage his subordinates. These concerns were corroborated by both of his direct supervisors, and by at least three other LMI executives.

7

Second, LMI did not replace Waters with a "substantially younger" employee. As a preliminary matter, it is worth noting that in a corporate reorganization, the "fact that the duties of a terminated older employee were assumed by a younger individual is not conclusive of age bias." *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994). Moreover, LMI did not actually replace Waters. While it is true that some of Waters' programming duties were assigned to other LMI employees, LMI eliminated the role of supervisor for the Applications Development group. In fact, Waters' old role remained unfilled when the district court issued its ruling more than twenty months after he was terminated. LMI simply decided to restructure the Applications Development group in a manner that resulted in the elimination of Waters' position.

Even if Waters could establish a prima facie case of age discrimination, his claim would still fail because LMI had a legitimate reason for terminating him. A decision to reorganize or restructure management responsibilities constitutes a non-discriminatory business decision. *See Brown v. Maryland Nat'l Capital Park, Planning Comm'n*, 162 F.3d 1154 (4th Cir. 1998). As noted, Brydges terminated Waters after deciding to eliminate Waters' position as supervisor of the Applications Development group. This decision was based on three related concerns. The first was that Waters was not actually leading the group; the second was that the company should eliminate Waters' position; and the third was that Waters was not suited to a position in the reorganized department. In the end, Brydges simply did not feel that Waters was suited to transition to a business consultant role. Brydges' analysis was informed by conversations with all of the employees in Waters' department, as well as numerous other department heads. Brydges'

8

conclusion about Waters' management skills was consistent with the criticisms that were made in writing over a ten-year period by Waters' prior supervisor. Waters himself testified that he was a supervisor in name only. LMI therefore had a valid, non-discriminatory reason for terminating Waters as part of its internal reorganization.

Against all of this, Waters relied upon a few scattered facts to argue that LMI's justification was merely a front for its discriminatory intent. First, Waters claimed that LMI offered inconsistent explanations for its decision to discharge Waters. This is incorrect. LMI justified Waters' termination by explaining that (1) Waters did not fit into the reorganized CIS department, and (2) he exhibited performance deficiencies. These are not mutually incompatible explanations. Waters' professional performance was relevant to Brydges' determination that Waters was unsuited for any of the remaining positions in the restructured department. Moreover, an employer is well within its rights to terminate someone for more than one non-discriminatory reason.

Second, Waters argued that LMI acted in a hostile manner to elderly employees by reducing retirement contributions and limiting annual leave accrual for employees with more than fifteen years of experience. The Supreme Court has found that a given benefits plan will only be found to be discriminatory if the plan was "actually motivated" by bias against older workers. *Kentucky Retirement Systems v. EEOC, 554 U.S. 135, 139 (2008).* LMI decided to make these benefits changes only after an outside consultant suggested that it do so to cut costs. The retirement contribution limits affected young and older workers alike, and the limitations on annual leave accruals were based on tenure, not age. This was plainly a business decision.

9

And third, Waters pointed to a single comment of LMI CEO Nelson Ford more than six months before Waters was terminated. That comment was made during a Town Hall meeting in the context of a discussion about the future direction of the company. Ford said, "People with gray hair are probably not the future . . . we've gotta think about how we're going to continue to make sure that this organization is as strong 50 years from now as it is today." J.A. 208-10. The remoteness in time between this statement and Waters' termination suggests that the statement should not give rise to an inference of age discrimination. *See Birkbeck*, 30 F.3d at 512.

More importantly, Ford's statement provides no evidence of age bias. To begin with, Ford was not responsible for making the decision about whether to terminate Waters, and there was no evidence that Ford's comments influenced Brydges' decision to eliminate Waters' position. While some may have taken exception to the comment, it was an innocuous remark reflecting the uncontroverted fact that the future of many companies rests upon bringing in a stream of younger workers. That of course does not justify stereotypes that older workers are unfamiliar with or unable to adapt to changes in technology or bereft of new ideas. In this case, however, Ford simply made a commonplace observation that certainly did not indicate that any kind of purge was going on or that older workers had no place at LMI. Such remarks do not indicate a discriminatory policy. *See id.*

In short, there was no discrimination afoot. LMI simply decided that Waters was not suited for a remaining position in a restructured department. This was a business decision that was entirely devoid of any age-based animus.

B.

Waters also fails to bring any evidence of retaliation. The ADEA prohibits an employer from retaliating against an employee for engaging in protected activity, such as opposing any practice made unlawful by the ADEA. 29 U.S.C. § 623(d).

To establish a prima facie case for retaliation, Waters must show that: "(1) he engaged in protected activity; (2) an adverse action was taken against him; and (3) there was a causal link between the protected activity and the adverse action." *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). Waters' retaliation claim fails under this standard.

First, it is questionable that Waters engaged in protected activity. Although "protected activity" encompasses informal complaints, *see Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998), an employee's conduct is protected only if he actually voices opposition to discriminatory activities. *See Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012).

Waters did not make any formal complaint. Instead, he argued that he engaged in protected activity on two occasions. The first occurred in a discussion with LMI CFO Lori Becker when Waters expressed concern about his job security following the resignation of his long-time supervisor, Robert Bertha. The second was in a conversation with Brydges in which Waters complained about LMI's policy for assigning office space. It is far from clear that these informal discussions conveyed that Waters feared becoming the victim of age-based discrimination.

Even if Waters could establish a prima facie case of retaliation, LMI still had a legitimate and non-discriminatory reason for terminating Waters. To prove causation, a

11

plaintiff must show that his employer knew or should have known that the employee engaged in a protected activity, and that the activity led to the adverse employment action. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). The dismissal, as we have explained, was made simply as a byproduct of the reorganization, not because of any discriminatory or retaliatory motive on the part of the decision-maker. There was, in other words, no causal link between the activity Waters claimed to be protected and his termination. LMI just did not have room for Waters in the restructured CIS department.

## III.

Finally, we affirm the district court's decision to deny LMI's motion for sanctions and for attorney's fees. Although Waters lost on the merits, the district court did not abuse its discretion in denying the motion for sanctions or attorney's fees. In this case, the district court justifiably concluded that a lack of success on the merits of the action did not warrant an award of fees or the imposition of sanctions.

## IV.

The judgment of the district court is accordingly

*AFFIRMED*.